## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENSEQUENCE, INC.,[1] | Case No. 18-10182 (KG) |
| Debtor. | |

**MOTION OF THE DEBTOR FOR ENTRY OF (I) AN ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (C) SCHEDULING AN AUCTION AND SALE HEARING, (D) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS, AND (E) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) APPROVING THE ASSET PURCHASE AGREEMENT BETWEEN THE DEBTOR AND THE SUCCESSFUL BIDDER, (B) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS, AND (D) GRANTING RELATED RELIEF**

The debtor and debtor-in-possession in the above-captioned case (the "**Debtor**") hereby moves (the "**Motion**"), pursuant to sections 105(a), 363, 364, 365, and 503 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of (i) an order approving the bid procedures, substantially in the form attached hereto as <u>Exhibit A</u> (the "**Bid Procedures Order**"), including (a) approving the proposed auction and bid procedures, attached as Exhibit 1 thereto (the "**Bid Procedures**") for the proposed sale of substantially all the Debtor's assets (the "**Sale**"), (b) scheduling an auction ("**Auction**") if the Debtor receives two or more Qualified Bids

---

[1]  The Debtor's last four digits of its U.S. federal tax identification number are 6904. The address for the Debtor's headquarters is 420 Lexington Ave., Suite 408, New York, NY 10170.

(as defined below), (c) scheduling a hearing to consider approval of the Sale (the "**Sale Hearing**"), (d) approving the form and manner of notice thereof, and (e) establishing procedures (the "**Assumption Procedures**") for the assumption and assignment of executory contracts and unexpired leases (collectively, the "**Contracts**"), including notice of proposed cure amounts; and, (ii) entry of an order approving the sale of substantially all of the Debtor's assets (the "**Sale Order**"), including (w) approving the transaction documents between the Debtor and the Successful Bidder (as defined below), (x) authorizing the Sale to the Successful Bidder (after the Auction, if necessary) free and clear of liens, claims, interests and encumbrances, (y) authorizing the assumption and assignment of the Contracts, and (z) granting related relief. In support of this Motion, the Debtor relies upon and incorporates by reference the *Declaration of Michael Wyse in Support of Chapter 11 Petition and First Day Pleadings* filed with the Court concurrently herewith (the "**First Day Declaration**"). In further support of the Motion, the Debtor, by and through its undersigned counsel, respectfully states as follows:

**Jurisdiction and Venue**

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtor confirms its consent, pursuant to Local Rule 9013-1(f), to the entry of a final order to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.       Venue of this case is proper in this District pursuant to 28 U.S.C. § 1408.

3.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363, 364, 365, and 503, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007 and 9014, and Local Rules 2002-1, 6004-1, and 9013-1(f).

## BACKGROUND

### A.      General Background

4.      On January 30, 2018 (the "**Petition Date**"), the Debtor filed a voluntary petition in this Court commencing a case for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").

5.      The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

6.      No trustee, examiner or committee has been appointed in this Chapter 11 Case.

7.      The factual background regarding the Debtor, including its business operations, its capital and debt structures, and the events leading to the filing of this Chapter 11 Case, is set forth in detail in the First Day Declaration and fully incorporated herein by reference.

### B.      The Debtor's Assets

8.      The Debtor's primary assets include its over seventy network contracts, a patent portfolio of existing and provisional patents, and its employees and their key relationships throughout the industry (the "**Assets**").

9.      The Debtor has, subject to this Court's approval, retained Wyse Advisors LLC ("**WALLC**") to conduct a marketing and sale process for substantially all of the Debtor's assets. To date, WALLC has contacted ten prospective non-strategic investors, two of whom have executed non-disclosure agreements and been provided with additional information regarding the Debtor. WALLC is in the process of contacting more than fifty potential investors, the majority

of which will be strategic investors. Given the size of the niche industry in which the Debtor

operates, WALLC decided it was in the best interest of the Debtor to wait until the Chapter 11

Case commenced before contacting strategic investors.

10.     The Debtor does not own any real property. Until recently, the Debtor leased

space in both Portland, Oregon and New York, New York.

## RELIEF REQUESTED

11.     By this Motion, the Debtor seeks entry of the Bid Procedures Order, substantially

in the form attached hereto as Exhibit A:

    (a)     authorizing and approving the Bid Procedures, in substantially the form
attached to the Bid Procedures Order as Exhibit 1, in connection with the
Sale of substantially all of the Debtor's Assets;

    (b)     approving the form and manner of notice, in substantially the form
attached to the Bid Procedures Order as Exhibit 2 (the "**Sale Notice**"),
of the Auction and Sale Hearing for the Sale;

    (c)     scheduling the Auction and Sale Hearing;

    (d)     approving the Assumption Procedures for the Contracts in connection with
the Sale; and

    (e)     granting related relief.

12.     The Debtor and its professionals will market the Assets prior to the Auction in the

manner set forth in the Bid Procedures Order. During this marketing process, the Debtor reserves

the right to enter into a stalking horse agreement (the "**Stalking Horse Agreement**") with a

bidder if the Debtor believes that such an agreement will further the purposes of the Auction by,

among other things, attracting value-maximizing bids. If the Debtor does determine that entering

into a Stalking House Agreement would be appropriate, it will seek further relief from this Court.

13.     Furthermore, the Debtor will seek entry of the Sale Order at the Sale Hearing:

(a)     authorizing and approving the Sale of all or substantially all of the Assets to the Successful Bidder (as defined in the Bid Procedures) on the terms substantially set forth in the Successful Bid;

(b)     authorizing and approving the Sale of all or substantially all of the Assets free and clear of liens, claims, encumbrances, and other interests, all in accordance with the Successful Bid;

(c)     authorizing the assumption and assignment of the Contracts; and

(d)     granting any related relief.[2]

14.     As part of the proposed sale process, the Debtor and WALLC will engage in a robust marketing effort for the Debtor's Assets, contacting both financial and strategic investors regarding a potential sale process. WALLC will not place any conditions on potentially interested parties regarding bid levels, structure, financing, or management in connection with the solicitation of indications of interest. All interested parties will be given an opportunity to execute a confidentiality agreement. Those parties that execute a confidentially agreement will be provided with substantial due diligence information concerning, and access to, the Debtor, including access to financial, operational, and other detailed information.

**The Proposed Sale**

15.     The Debtor believes a prompt sale of the Assets represents the best option available for all stakeholders in the Chapter 11 Case. Moreover, it is critical for the Debtor to execute on a sale transaction within the timeframe contemplated by the Debtor's agreements with its prepetition lender. Specifically, the Debtor has agreed to comply with certain milestones in exchange for the permission to use cash collateral pursuant to the *Motion of Debtor for Entry of Interim and Final Orders (I) Authorizing the Debtor's Use of Cash Collateral, (II) Approving*

---

[2] The Debtor reserves the right to file and serve any supplemental pleading or declaration that the Debtor deems appropriate or necessary in its reasonable business judgment, including any pleading summarizing the competitive bid and sale process and the results thereof, in support of its request for entry of the Sale Order before the Sale Hearing.

*Adequate Protection to Prepetition Lender, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing* (the "**Cash Collateral Motion**") and the proposed order attached thereto (the "**Cash Collateral Order**"). It is also anticipated that the Debtor may require debtor-in-possession financing that will contain similar milestones.

16.    By this Motion, the Debtor requests that the Court approve the following general timeline. These dates are subject to change in the event that the Bankruptcy Court does not enter an interim order at the hearing on the Cash Collateral Motion:

(a)    ***Contract Cure Objection Deadline***: Objections to the potential assumption and assignment of any Contract will be filed and served no later than 4:00 p.m. (ET) on April 10, 2018.

(b)    ***Bid Deadline***: Bids for the Assets, including a marked-up form of the Stalking Horse Agreement, if one has been accepted by the Debtor as contemplated by the Bid Procedures Order, as well as the deposit and the other requirements for a bid to be considered a Qualified Bid (as defined in the Bid Procedures) must be received by no later than April 10, 2018 at 4:00 p.m. (prevailing Eastern Time) (the "**Bid Deadline**").

(c)    ***Auction***: The Auction, if necessary, will be held at the offices of Polsinelli PC, 600 Third Avenue, New York, New York 10016 on April 12, 2018 at 10:00 a.m. (prevailing Eastern Time), or such other location as identified by the Debtor after notice to all Qualified Bidders.

(d)    ***Sale Objection Deadline***: Objections to the Sale will be filed and served no later than April 10, 2018.

(e)    ***Sale Hearing***: Subject to the Court's availability and schedule, the Sale Hearing will commence on or before April 17, 2018.

17.    The Debtor believes that this timeline maximizes the prospect of receiving a higher or otherwise better offer without unduly prejudicing its estate. To further ensure that the Debtor's proposed Auction and Sale process maximizes value for the benefit of the Debtor's estate, the Debtor and its professionals will use the time following entry of the Bid Procedures Order to actively market the Assets in an attempt to solicit the highest or otherwise best bids

available. The Debtor believes the relief requested by this Motion is in the best interests of its creditors, other stakeholders, and all other parties in interest, and should be approved.

## The Bid Procedures Order

### I.    The Bid Procedures

18.    To optimally and expeditiously solicit, receive, and evaluate bids in a fair and accessible manner, the Debtor has developed and proposed the Bid Procedures, attached as Exhibit 1 to the Bid Procedures Order. The Bid Procedures were designed to permit an expedited sale process, to promote participation and active bidding, and to ensure that the Debtor receives the highest or otherwise best offer for the Assets. The Debtor believes that the timeline for consummating the sale process established pursuant to the Bid Procedures is in the best interest of its estate and all parties in interest.

19.    The Bid Procedures describe, among other things, the requirements for prospective purchasers to participate in the bid process, the availability and conduct of due diligence, the deadline for submitting a competing bid, the method and factors for determining Qualified Bids, and the criteria for selecting a Successful Bidder.

20.    The following summary describes the salient points of the Bid Procedures and discloses certain information required pursuant to Local Rule 6004-1:[3]

(a)    **Qualification of Bidders (Local Bankr. R. 6004-1(c)(i)(A)).** To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "**Bid**"), and each party submitting such a Bid (each, a "**Bidder**"), must be determined by the Debtor to satisfy each of the following conditions:

(i)    Corporate Authority. Written evidence reasonably acceptable to the Debtor demonstrating appropriate corporate authorization to consummate the Sale; *provided, however*, that, if the Bidder is an entity specially formed for the purpose of effectuating the Sale, then the Bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of the Sale by the equity holder(s) of such Bidder.

---

[3]  This summary of the Bid Procedures is qualified in its entirety by the Bid Procedures.

    **(ii)**    Proof of Financial Ability to Perform. Written evidence that the Debtor reasonably concludes demonstrates that the Bidder has the necessary financial ability to close the Sale and provide adequate assurance of future performance under all Assigned Contracts. Such information should include, *inter alia*, the following:

- contact names, email addresses and telephone numbers for verification of financing sources;

- evidence of the Bidder's ability to close and/or proof of any funding commitments that are needed to close the Sale;

- the Bidder's current financial statements; and

- any other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such Bidder has the ability to close the Sale; *provided, however*, that the Debtor shall determine, in consultation with the Consultation Parties (as defined in the Bid Procedures), whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

    **(b)**    **Qualified Bids (Local Bankr. R. 6004-1(c)(i)(B)).** Each Bid must be determined by the Debtor, in consultation with the Consultation Parties, to satisfy each of the following conditions:

    **(i)**    Good Faith Deposit. Each Bid must be accompanied by a deposit paid in cash or by wire transfer in immediately available funds, into an interest bearing escrow account to be identified and established by the Debtor in an amount equal to ten percent (10%) of the proposed purchase price (the "**Good Faith Deposit**").

    **(ii)**    Terms. A Bid must include executed transaction documents pursuant to which the Bidder proposes to effectuate the Sale (the "**Transaction Documents**"). The Debtor shall evaluate all Bids to determine whether such Bid(s) maximizes the value of the Debtor's estate as a whole. The Transaction Documents shall also identify any Contracts of the Debtor that the Bidder wishes to have assumed and assigned to it (collectively, the "**Assigned Contracts**"). The Debtor will consider proposals for less than substantially all of the Debtor's Assets or operations. A bid to purchase only certain assets of the Debtor shall include a purchase price determined by such Bidder and shall be reviewed by the Debtor in consultation with the Consultation Parties to evaluate the sufficiency of the purchase price.

    **(iii)**    Contingencies. A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but

may be subject to the accuracy in all material respects at the closing of specified representations and warranties.

**(iv)**     Irrevocable. A Bid must be irrevocable until the closing of the Auction; *provided, however*, that if such Bid is accepted as the Successful Bid or the Backup Bid (as defined in the Bid Procedures), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bid Procedures.

**(v)**     Disclaimer of Fees. Each Bid (other than a Stalking Horse Bid, if any) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.

**(vi)**     Bid Deadline. The Debtor must receive a Bid in writing, on or before the Bid Deadline, April 10, 2018 at 4:00 p.m. (prevailing Eastern Time) or such later date as may be agreed to by the Debtor.

(c)     **Right to Credit Bid (Local Bankr. R. 6004-1(b)(iv)(N)).** The Debtor's prepetition lender, Myrian Capital Fund, LLC (Series C) (the "**Prepetition Secured Party**") shall be deemed to be a Qualified Bidder and is not required to make any Good Faith Deposit in submitting a Credit Bid (defined below). The Prepetition Secured Party may participate in the Auction and may Credit Bid at any time up to the conclusion of the Auction, in its sole and absolute discretion, any portion and up to the entire amount of its individual claim (a "**Credit Bid**"). Upon exercise of a Credit Bid, the Prepetition Secured Party shall not be required to take title to or ownership of, or have any obligation in connection with, or be deemed to have taken title to or ownership of, or have any obligation in connection with, the Assets, and the Prepetition Secured Party shall have the right to designate any person or entity in its sole and absolute discretion that shall take title to the Assets that are subject to the Credit Bid. The Prepetition Secured Party will not be a Backup Bidder unless it otherwise consents in writing.

Subject to the prior paragraph, the Stalking Horse Bidder (if any) shall have the right (including as part of any Overbid) to credit bid all or a portion of its Bid Protections (if any) pursuant to Bankruptcy Code section 363(k).

(d)     **Cancelation of the Auction.** If the Debtor does not receive at least two Qualified Bids (other than a Credit Bid) or otherwise determines, after consultation with the Consultation Parties, not to proceed with the Sale, the Debtor may elect not to conduct the Auction and may cancel the Auction.

(e)     **Bidding Increments and Overbid (Local Bankr. R. 6004-1(c)(i)(C)).** At the Auction, the Debtor will announce the leading Qualified Bid (the "**Auction Baseline Bid**"). Bidding on the Assets beyond the Auction Baseline Bid will be done in increments that will be determined by the Debtors after consultation with the Consultation Parties. Additional consideration may include cash, the

assumption of debt or marketable securities, a credit bid under Bankruptcy Code section 363(k) of an allowed secured claim, other consideration as the Debtor may permit and value in its sole discretion, or any combination thereof.

(f)   **Backup Bidder (Local Bankr. R. 6004-1(c)(i)(C)).** If an Auction is conducted, the party with the next highest or otherwise best Qualified Bid at the Auction (other than a Credit Bid), as determined by the Debtor, in the exercise of its business judgment, and in consultation with the Consultation Parties, shall be required to serve as a backup bidder (the "**Backup Bidder**"). The Backup Bidder shall be required to keep its final Bid at the auction (the "**Backup Bid**") open and irrevocable until the earlier of 5:00 p.m. (ET) on the date that is seven (7) days after entry of the Sale Order (the "**Outside Backup Date**") or the closing of the transaction with the Successful Bidder. Following entry of the Sale Order, if the Successful Bidder fails to consummate an approved transaction because of a breach or failure to perform on the part of such Successful Bidder, the Debtor may designate the Backup Bidder to be the new Successful Bidder, and the Debtor will be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court. In such a case, the defaulting Successful Bidder's Good Faith Deposit, if any, shall be forfeited to the Debtor's estate, and the Debtor specifically reserves the right to seek all available damages from the defaulting Successful Bidder. The deposit, if any, of the Backup Bidder shall be held by the Debtor until the earlier of two (2) business days after (i) the closing of the Sale with the Successful Bidder or (ii) the Outside Backup Date; *provided, however*, that in the event the Successful Bidder does not consummate the transaction as described above and the Debtor provides notice to the Backup Bidder, the Backup Bidder's Good Faith Deposit shall be held until the closing of the transaction with the Backup Bidder. In the event that the Debtor fails to consummate a transaction with the Backup Bidder as described above, the Backup Bidder's Good Faith Deposit shall be forfeited to the Debtor's estate, and the Debtor specifically reserves the right to seek all available damages from the defaulting Backup Bidder.

(g)   **Diligence Materials.** Any person or entity that wishes to conduct due diligence with respect to the Assets by gaining access to certain diligence materials (the "**Diligence Materials**") must deliver to the Debtor an executed confidentiality agreement. The executed confidentiality agreement must be signed and transmitted by the person or entity wishing to have access to the Debtor's Diligence Materials.

(h)   **Reservation of Rights (Local Bankr. R. 6004-1(c)(i)(D)).** The Debtor reserves its right to modify these Bid Procedures in its reasonable business judgment in any manner, after consultation with the Consultation Parties, that will best promote the goals of the bidding process or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets.

21.     Importantly, the Bid Procedures recognize the Debtor's fiduciary obligations to maximize sale value and, as such, do not impair the Debtor's ability to consider all Qualified Bid proposals. Additionally, as noted above, the Bid Procedures preserve the Debtor's right to modify the Bid Procedures as necessary or appropriate to maximize value of the Debtor's estate.

## II.     The Auction and Sale.

22.     If one or more Qualified Bids are received by the Bid Deadline, the Debtor will conduct an Auction to determine the highest and otherwise best Qualified Bid. This determination shall take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the Debtor's estate, after consultation with the Consultation Parties, including, without limitation, the following: (a) the amount and nature of the consideration; (b) the proposed assumption of any liabilities and/or executory contracts or unexpired leases; (c) the ability of the Qualified Bidder to close the proposed transaction; (d) the proposed closing date and the likelihood, extent and impact of any potential delays in closing, including delays owing to regulatory uncertainty; (e) any purchase price adjustments; (f) the impact of the transaction on any actual or potential litigation; and (g) the net after-tax consideration to be received by the Debtor's estate (the "**Bid Assessment Criteria**"). If no more than one Qualified Bid is received by the Bid Deadline, the Debtor may determine not to conduct the Auction and deem the Qualified Bid to be the Successful Bid without conducting the Auction. The Debtor seeks authority from the Court to schedule the Auction on a date as further described in the Bid Procedures.

## III.     Form and Manner of Sale Notice

23.     On or within two (2) business days after entry of the Bid Procedures Order, the Debtor will cause the Sale Notice to be served on the following parties or their respective counsel, if known: (a) the United States Trustee for the District of Delaware (the "**U.S.**

**Trustee**"); (b) counsel to the Prepetition Secured Party; (c) counterparties to the Contracts (the "**Contract Counterparties**"); (d) all parties who have expressed a written interest in the Assets; (e) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (f) the Internal Revenue Service; (g) all other applicable state and local taxing authorities; (h) all of the Debtor's other creditors; (i) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (j) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

**IV.    Summary of the Assumption Procedures.**

24.    The Debtor is also seeking approval of the Assumption Procedures to facilitate the fair and orderly assumption and assignment of the Contracts in connection with the Sale. Pursuant to the Bid Procedures Order, notice of the proposed assumption and assignment of the Contracts to the Successful Bidder, the proposed cure amounts, and the right, procedures, and deadlines for objecting, will be provided in separate notices, attached to the Bid Procedures Order as Exhibit 3 (the "**Cure and Possible Assumption and Assignment Notice**") and Exhibit 4 (the "**Assumption Notice**") to be sent to the Contract Counterparties. Because the Bid Procedures Order sets forth the Assumption Procedures in detail, they are not restated here. Generally, however, the Assumption Procedures: (a) outline the process by which the Debtor will serve notice to all Contract Counterparties regarding the proposed assumption and assignment and related cure amounts, if any, informing such parties of their right, and the procedures, to object; and (b) establish objection and other relevant deadlines and the manner for resolving disputes relating to the assumption and assignment of the Contracts to the extent necessary.

## Basis for Relief

I.    **The Relief Sought in the Bid Procedures Order Is in the Best Interests of the Debtor's Estate and Should Be Approved.**

    A.    *The Proposed Notice of the Bid Procedures and the Sale Process Is Appropriate.*

26.    The Debtor seeks to sell the Assets through an Auction and asset sale. The Debtor and its advisors, led by the Debtor's CRO, will conduct an extensive marketing process. The Debtor will develop a list of "Contact Parties" who will receive a copy of the "Information Package" (both as defined in the Bid Procedures). The list of Contact Parties will encompass those parties whom the Debtor believes may potentially be interested in pursuing a Sale and whom the Debtor reasonably believes may have the financial resources to consummate such a transaction. The Bid Procedures are designed to elicit bids from one or more parties and to encourage a robust auction of the Assets, thus maximizing the value of the Debtor's estate for the benefit of its creditors.

27.    Under Bankruptcy Rule 2002(a) and (c), the Debtor is required to notify creditors of the proposed sale of the Assets, including a disclosure of the time and place of any auction, the terms and conditions of a sale, and the deadline for filing any objections. The Debtor respectfully submits that the Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (a) the date, time, and place of the Auction (if one will be held); (b) the Bid Procedures; (c) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d) a reasonably specific identification of the Assets; (e) a description of the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the Sale proceeds; and (f) notice of the proposed assumption and assignment of the Contracts to the Successful Bidder.

28.     The Debtor further submits that notice of this Motion and the related hearing to consider entry of the Bid Procedures Order, coupled with service of the Sale Notice, the Cure and Possible Assumption and Assignment Notice, and the Assumption Notice, as provided for herein, constitutes good and adequate notice of the Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002. The Debtor further submits that the proposed notice procedures are designed to maximize the chance of obtaining the broadest possible participation in the Debtor's marketing process, while minimizing costs to the estate. Accordingly, the Debtor respectfully requests that the Court find that the proposed notice procedures set forth in this Motion are sufficient, and that no other or further notice of the Bid Procedures, Auction, Sale, or Sale Hearing is required.

**B.    *The Bid Procedures Are Appropriate and Will Maximize Value.***

29.     Bidding procedures should be approved when they provide a benefit to the debtor's estate by maximizing the value of the debtor's assets. *See In re Edwards*, 228 B.R. 552, 361 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."). Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets. *See In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'"); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (same); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (same); *see also In re Integrated Resources, Inc.*, 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed in accordance with the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

30.     The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3d Cir. 2004); *Official Comm. of Unsecured Creditors of Cybergenics, Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003); *see also In re Food Barn Stores, Inc.*, 101 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."); *Edwards*, 228 B.R. at 561.

31.     To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore appropriate in the context of bankruptcy transactions. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 537 (3d Cir. 1999); *Integrated Resources*, 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the Debtors' assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y.1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

32.     The Debtor believes that the Bid Procedures will establish the parameters under which the value of the Sale may be tested at the Auction. The Bid Procedures will increase the likelihood that the Debtor will receive the greatest possible consideration because they will ensure a competitive and fair bidding process.

33.     The Debtor believes that the proposed Bid Procedures will promote active bidding from seriously interested parties and will elicit the highest or otherwise best offers available for

the Assets. The proposed Bid Procedures will enable the Debtor to conduct the Sale in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who will offer the best package for the Assets and who can demonstrate the ability to close the transaction.

34.     Specifically, the Bid Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed Bid. At the same time, the Bid Procedures provide the Debtor with a robust opportunity to consider competing Bids and select the highest or otherwise best offer for the completion of the Sale. Additionally, if the Debtor selects a Stalking Horse Bid, the Debtor's entry into the Stalking Horse Agreement with the Stalking Horse Bidder will ensure that the Debtor obtains fair market value for the Assets by setting a minimum purchase price that will be tested in the marketplace. As such, creditors of the Debtor's estate can be assured that the consideration obtained will be fair and reasonable and at or above the market value.

35.     The Debtor submits that the proposed Bid Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings, and are consistent with other procedures previously approved in this District. *See In re Cal. Proton Treatment Ctr., LLC*, No. 17-10477 (LSS) (Bankr. D. Del. May 12, 2017); *In re Emerald Oil, Inc.*, No. 16-10704 (KG) (Bankr. D. Del. July 28, 2016); *In re Quicksilver Res. Inc.*, No. 15-10585 (LSS) (Bankr. D. Del. Oct. 6, 2015); *In re Source Home Entm't LLC*, No. 14-11553 (KG) (Bankr. D. Del. July 21, 2014); *In re Palm Harbor Homes, Inc.*, No. 10-13850 (Bank. D. Del. Jan. 6, 2011); *In re Ultimate Escapes Hldgs, LLC*, No. 10-12915 (Bankr. D. Del. Oct. 8, 2010); *In re PTC Alliance Corp.*, No. 09-13395

(Bankr. D. Del. Nov. 6, 2009); *In re Hayes Lemmerz Int'l, Inc.*, No. 09-11655 (Bankr. D. Del. Sept. 22, 2009); *In re VeraSun Energy Corp.*, No. 08-12606 (Bankr. D. Del. Feb. 19, 2009); *see also In re Dura Auto. Sys., Inc.*, Case No. 06-11202 (KJC) (Bankr. D. Del. July 14, 2007).

36.    Thus, the Bid Procedures are reasonable, appropriate and within the Debtor's sound business judgment under the circumstances because the Bid Procedures are designed to maximize the value to be received by the Debtor's estate.

**C.    *The Proposed Notice Procedures for the Assigned Contracts and the Identification of Related Cure Amounts Are Appropriate.***

37.    As set forth above, the Sale contemplates the potential assumption and assignment of the Contracts to the Successful Bidder arising from the Auction, if any. In connection with this process, the Debtor believes it is necessary to establish a process by which: (a) the Debtor and the Contract Counterparties can reconcile cure obligations, if any, in accordance with Bankruptcy Code sections 105(a) and 365; and (b) such counterparties can object to the potential Assumption Procedures.

38.    The Bid Procedures specify the process by which the Debtor will serve Cure and Possible Assumption and Assignment Notices and the procedures and deadline for Contract Counterparties to Assigned Contracts to file and serve Cure or Assignment Objections.

39.    Except as may otherwise be agreed to in the Successful Bid or by the parties to an Assigned Contract, at the closing of the Sale, the Successful Bidder shall cure those defaults under the Assigned Contracts that need to be cured in accordance with Bankruptcy Code section 365(b) by (a) payment of the undisputed cure amount (the "**Cure Amount**") and/or (b) reserving amounts with respect to any disputed cure amounts.

40.    As set forth in the Bid Procedures Order, the Debtor also requests that any party that fails to object to the proposed assumption and assignment of any Contract be deemed to

consent to the assumption and assignment of the applicable Contract pursuant to Bankruptcy Code section 365 on the terms set forth in the Sale Order, along with the Cure Amounts identified in the Cure and Possible Assumption and Assignment Notice. *See, e.g., In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to the Motion, a creditor is deemed to consent); *Pelican Homestead v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

41.    The Debtor believes that the Assumption Procedures are fair and reasonable, provide sufficient notice to the Contract Counterparties of the potential assumption and assignment of their Contracts, and provide certainty to all parties in interest regarding their obligations and rights with respect thereof. Accordingly, the Debtor requests that the Court approve the Assumption Procedures set forth in the Bid Procedures Order.

## II.    Approval of the Proposed Sale Is Appropriate and in the Best Interests of the Estate.

### A.    *The Asset Sale Should Be Authorized Pursuant to Bankruptcy Code Section 363 as a Sound Exercise of the Debtor's Business Judgment.*

42.    Bankruptcy Code section 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A sale of the debtor's assets should be authorized pursuant to Bankruptcy Code section 363 if a sound business purpose exists for the proposed transaction. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) ("Under Section 363, the debtor-in-possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 174 (Bankr. D. Del. 1991); *see also In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (same); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Telesphere Commc'ns,*

*Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999). A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders. *See, e.g., In re Abbotts Dairies of Pa, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983).

43.     Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See Del.& Hudson*, 124 B.R. at 176; *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987).

44.     "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Res.*, 147 B.R. at 656 (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995) ("The business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company."); *In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business

justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate."). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under Bankruptcy Code section 363(b)(1). Indeed, when applying the business judgment standard, courts show great deference to a debtor's business decisions. *See Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.)*, 1989 WL 106838, at *3 (N.D. III. 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

45.     As set forth above, the Debtor has a sound business justification for selling the Assets. First, the Debtor believes that the Sale will maximize the Assets' going-concern value by allowing a party to bid on business assets that would have substantially less value on a stand-alone basis. Moreover, to the extent that the Successful Bidder assumes certain of the Contracts, it will result in payment in full for a number of the Debtor's creditors.

46.     Second, the sale of the Assets will be subject to competing bids, enhancing the Debtor's ability to receive the highest or otherwise best value for the Assets. The value of the Assets will be tested through the Auction conducted pursuant to and according to the Bid Procedures. Ultimately, the Successful Bid, after being subject to a "market check" in the form of the Auction and accepted by the Debtor in the exercise of its reasonable business judgment, will constitute the highest or otherwise best offer for the Assets and will provide a greater recovery for its estate than any known or practically available alternative. *See, e.g., In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, at *4 (Bankr. D. Del. 2001) (while a "section 363(b) sale transaction does not require an auction procedure . . . the auction procedure has developed over the years as an effective means for producing an arm's-length fair value

transaction"). Consequently, the fairness and reasonableness of the consideration to be paid by the Successful Bidder ultimately will be demonstrated by adequate "market exposure" and an open and fair auction process — the best means for establishing whether a fair and reasonable price is being paid.

47.      Thus, the Debtor submits that the Successful Bidder's purchase agreement will constitute the highest or otherwise best offer for the Assets and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. As such, the Debtor's determination to sell the Assets through an Auction process and subsequently to enter into the purchase agreement with the Successful Bidder will be a valid and sound exercise of the Debtor's business judgment. The Debtor will submit evidence at the Sale Hearing to support these conclusions. Therefore, the Debtor requests that the Court make a finding that the proposed sale of the Assets is a proper exercise of the Debtor's business judgment and is rightly authorized.

### B.      *Sale Provisions Highlighted Pursuant to Local Rule 6004-1(b)(iv).*[4]

48.      Pursuant to Local Rule 6004(b)(iv)(C), a sale motion must highlight any provisions pursuant to which an entity is being released or claims against any entity are being waived or otherwise satisfied. The Sale Order may provide that certain claims against the Debtor and/or Successful Bidder are barred or otherwise waived.

49.      Pursuant to Local Rule 6004(b)(iv)(E), a sale motion must highlight any deadlines for the closing of the proposed sale or deadlines that are conditions to closing the proposed transaction. As set forth above, the Debtor is subject to the deadlines under the Cash Collateral Order, among which include the condition that this Bid Procedures Order is entered by this Court

---

[4]  If a provision of Local Rule 6004-1(b)(iv) is not discussed in this section, it means that the provisions governing the sale of the Assets do not contain a provision that triggers disclosure under that rule.

no later than February 20, 2018 and that the Sale Order be approved no later than April 19, 2018. *See* Cash Collateral Order.

50.     Pursuant to Local Rule 6004(1)(b)(iv)(J), a sale motion must highlight whether, if the debtor proposes to sell substantially all of its assets, the debtor will retain or have reasonable access to its books and records to enable it to administer its bankruptcy case. The proposed Sale Order will provide that the Debtor shall have reasonable access to its books and records.

51.     Pursuant to Local Rule 6004-1(b)(iv)(L), a sale motion should highlight any provision limiting the proposed purchaser's successor liability. The proposed Sale Order will provide that the Successful Bidder shall not have any successor liability related to the Debtor or the Assets.

52.     Pursuant to Local Rule 6004-1(b)(iv)(N), a sale motion must highlight any provision by which the debtor seeks to allow credit bidding pursuant to Bankruptcy Code section 363(k). The Bid Procedures allow the Prepetition Secured Party to credit bid the full amount of the obligations under the Cash Collateral Order and all claims of the Prepetition Secured Party in connection with the Sale.

53.     Pursuant to Local Rule 6004-1(b)(iv)(O), a sale motion must highlight any provision whereby the debtor seeks relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h). As explained in further detail below, to maximize the value received for the Assets (and consistent with the Cash Collateral deadlines), the Debtor seeks to close the Sale as soon as possible after the Sale Hearing. Accordingly, the Debtor has requested that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

### C.     *Adequate and Reasonable Notice of the Sale Will Be Provided.*

54.     As described above, the Sale Notice: (a) will be served in a manner that provides at least 21-days' notice of the date, time, and location of the Sale Hearing; (b) informs parties in

interest of the deadlines for objecting to the Sale or the assumption and assignment of the Contract; and (c) otherwise includes all information relevant to parties interested in or affected by the Sale. Significantly, the form and manner of the Sale Notice will have been approved by this Court pursuant to the Bid Procedures Order, after notice and a hearing, before it is served on parties in interest.

### D.       *The Sale and Purchase Price Will Reflect a Fair-Value Transaction.*

55.      Where there is a court-approved auction process, a full and fair price is presumed to have been obtained for the assets sold, as the best way to determine value is exposure to the market. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999). The Debtor will continue to market the Assets and solicit offers consistent with the Bid Procedures, including, without limitation, by providing acceptable Bidders with access to Due Diligence and requested information. In this way, the number of Bidders that are eligible to participate in the competitive Auction process will be maximized. On the other hand, if the Debtor enters into a Stalking Horse Agreement and no auction is held because no auction is necessary, the Stalking Horse Agreement's purchase price conclusively will have been demonstrated to be fair value.

### E.       *The Sale of the Assets Should Be Free and Clear of Interests Pursuant to Bankruptcy Code Section 363(f).*

56.      The Debtor further submits that it is appropriate to sell the Assets free and clear of all liens, claims, encumbrances, and interests (collectively, the "**Interests**") pursuant to Bankruptcy Code section 363(f), with any such Claims and Interests attaching to the net sale proceeds of the Assets, as and to the extent applicable.

57.      Section 363(f) permits a debtor to sell property free and clear of another party's interest in the property if (a) applicable nonbankruptcy law permits such a free and clear sale; (b)

the holder of the interest consents; (c) the interest is a lien and the sale price of the property

exceeds the value of all liens on the property; (d) the interest is the subject of a *bona fide* dispute;

or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a

monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f).

58.     Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the

requirements enumerated therein will suffice to permit the Debtor's sale of the Assets free and

clear of all interests (*i.e.*, all liens, claims, rights, interests, charges, or encumbrances), except

with respect to any interests that may be assumed liabilities under the applicable purchase

agreement. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any

of five conditions are met, the Debtors have the authority to conduct the sale free and clear of all

liens."); *see also In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y.

March 6, 1992) ("[s]ection 363(f) is in the disjunctive, such that the sale free of the interest

concerned may occur if any one of the conditions of § 363(f) have been met."); *Citcorp

Homeowners Servs., Inc. v. Eliot (In re Eliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same);

*Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930

F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that section 363(f) of the Bankruptcy Code is

written in the disjunctive; holding that the court may approve the sale "free and clear" provided

that at least one of the subsections of section 363(f) has been satisfied).

59.     The Debtor submits that, excluding assumed agreements, the Assets may be sold

free and clear of liens, claims, encumbrances, and other interests—all in accordance with at least

one of the five conditions of section 363(f). Consistent with section 363(f)(2), each of the parties

holding liens on the Assets, if any, will consent, or absent any objection to this Motion, will be

deemed to have consented to, the Sale and transfer of the Assets. Furthermore, any party holding

a valid lien against the Assets will be adequately protected by having its liens, if any, attach to the sale proceeds received by the Debtor from the Sale of the Assets to the Successful Bidder, in the same order of priority, with the same validity, force and effect that such creditor had prior to such sale, subject to any claims and defenses the Debtor and its estate may possess. Accordingly, section 363(f) authorizes the sale and transfer of the Assets free and clear of any such Interests.

      **F.**     ***The Assets and the Assigned Contracts Should Be Sold Free and Clear of Successor Liability.***

      60.     The Sale Order will provide that the Successful Bidder shall not have any successor liability related to Seller or the Assets to the maximum extent permitted by law. Extensive case law establishes that claims against a winning bidder may be directed to the proceeds of a free and clear sale of property, and may not subsequently be asserted against that buyer.

      61.     Although Bankruptcy Code section 363(f) provides for the sale of assets "free and clear any interests," the term "any interest" is not defined anywhere in the Bankruptcy Code. *Folger Adam Security v. DeMatteis/MacGregor JV*, 209 F.3d 252, 257 (3d Cir. 2000). In the case of *In re Trans World Airlines. Inc.*, 322 F.3d 283, 288-89 (3d Cir. 2003), the Third Circuit specifically addressed the scope of the term "any interest." The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only in rem interests in property," the trend in modern cases is towards "a more expansive reading of 'interests in property' which 'encompasses other obligations that may flow from ownership of the property.'" *Id.* at 289 (citing 3 Collier on Bankruptcy 363.06[1]). As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-82 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger*, the scope of section 363(f) is not limited to in rem interests. Thus, the Third Circuit in *Folger* cited *Leckie* for the proposition that the debtors

"could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger*, 209 F.3d at 258.

62.    Courts have consistently held that a buyer of a debtor's assets pursuant to a section 363 sale takes free from successor liability resulting from pre-existing claims. *See In re Ormet*, 2014 WL 3542133 at *4 (Bankr. D. Del. July 17, 2014); *The Ninth Avenue Remedial Group v. Allis-Chalmers Corp.*, 195 B.R. 716, 732 (Bankr. N.D. Ind. 1996) (stating that a bankruptcy court has the power to sell assets free and clear of any interest that could be brought against the bankruptcy estate during the bankruptcy); *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 93-94 (2d Cir. 1988) (channeling of claims to proceeds consistent with intent of sale free and clear under section 363(f) of the Bankruptcy Code); *In re New England Fish Co.*, 19 B.R. 323, 329 (Bankr. W.D. Wash. 1982) (transfer of property in free and clear sale was free and clear of Title VII employment discrimination and civil rights claims of Debtors' employees); *In re Hoffman*, 53 B.R. 874, 876 (Bankr. D.R.I. 1985) (transfer of liquor license free and clear of any interest permissible even though the estate had unpaid taxes); *American Living Systems v. Bonapfel (In re All Am. of Ashburn, Inc.)*, 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986) (product liability claims precluded from being asserted against his successor in a sale of assets free and clear); *WBQ P'ship v. Virginia Dept. of Medical Assistance Services (In re WBQ P'ship)*, 189 B.R. 97, 104-05 (Bankr E D. Va. 1995) (Commonwealth of Virginia's right to recapture depreciation is an "interest" as used in section 363(f)).

63.    The purpose and value of an order authorizing the transfer of the Assets would be frustrated if claimants thereafter could use the transfer as a basis to assert claims against the Successful Bidder. Under Bankruptcy Code section 363(f), the Successful Bidder is entitled to

know that the Assets are not tainted by latent claims that could be asserted against the Successful

Bidder after the proposed transaction is completed. Absent that ruling, the value of the Assets

could be severely compromised.

64.     Accordingly, there is substantial authority for any order approving the Sale of the

Assets to include a finding that the Successful Bidder is not liable as a successor under any

theory of successor liability, for Interests that encumber or relate to the Assets.

**G.     *The Sale Has Been Proposed in Good Faith and Without Collusion, and the Successful Bidder Will Be a "Good-Faith Purchaser" Entitled to the Full Protection of Bankruptcy Code Section 363(m); and the Sale of the Assets Does Not Violate Bankruptcy Code Section 363(n).***

65.     The Debtor requests that the Court find that the Successful Bidder is entitled to

the benefits and protections provided by Bankruptcy Code section 363(m) in connection with the

sale of the Assets.

66.     Section 363(m) provides, in pertinent part:

> [t]he reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property does not
> affect the validity of a sale or lease under such authorization to an entity
> that purchased or leased such property in good faith, whether or not such
> entity knew of the pendency of the appeal, unless such authorization and
> such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

67.     Section 363(m) thus protects the purchaser of assets sold pursuant to section 363

from the risk that it will lose its interest in the purchased assets if the order allowing the sale is

reversed on appeal, as long as such purchaser purchased the assets in "good faith." While the

Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good

faith through the integrity of its conduct during the course of the sale proceedings, finding that,

where there is a lack of such integrity, a good-faith finding may not be made. *See, e.g., Abbotts*

*Dairies of Pa.*, 788 F.2d at 147 ("Typically, the misconduct that would destroy a [buyer's] good

faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In the Matter of Andy Frain Servs., Inc.*, 798 F.2d 1113 (7th Cir. 1986) (same); *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

68.    The Debtor submits that the Stalking Horse Bidder, if any, or any other Successful Bidder arising from the Auction would be a "good faith purchaser" within the meaning of section 363(m), and the resulting purchase agreement would be a good-faith agreement on arm's-length terms entitled to the protections of section 363(m).[5] First, as set forth in more detail above, the consideration to be received by the Debtor pursuant to the Sale will be subject to a market process by virtue of the Debtor's marketing efforts, led by its CRO, and the Auction will be substantial, fair, and reasonable. Second, the purchase agreement entered into by the Debtor and the Successful Bidder will be the result of extensive arm's-length negotiations, during which all parties will have the opportunity to be, and the Debtor will be, represented by competent counsel, and any purchase agreement with a Successful Bidder will be the culmination of the Debtor's competitive market process and, if necessary, the Auction, in which all negotiations will be conducted on an arm's-length, good-faith basis. Third, where—as the Debtor anticipates will be the case here—there is no indication of any "fraud or collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" or similar conduct, there is no cause that would permit the Sale to be avoided pursuant to Bankruptcy Code section 363(n). Moreover, with respect to potential

---

[5]  The Debtor believes that a finding of good faith within the meaning of section 363(m) of the Bankruptcy Code will be appropriate for any Successful Bidder arising from the Auction, if any, and the Bid Procedures. Pursuant to the Bid Procedures, any Successful Bidder will have had to present a proposal in accordance with the Bid Procedures. In addition, the Debtor will not choose as the Successful Bidder or the Backup Bidder (as defined in the Bid Procedures) any entity whose good faith under section 363(m) can reasonably be doubted, and will be prepared to present the Court with sufficient evidence to allow the Court to find that the "good faith" standard of section 363(m) has been satisfied.

Bidders, the Bid Procedures are designed to ensure that no party is able to exert undue influence over the process. Finally, the Successful Bidder's offer will be evaluated and approved by the Debtor in consultation with its advisors and the Consultation Parties. Accordingly, the Debtor believes that the Successful Bidder and the resulting purchase agreement should be entitled to the full protections of Bankruptcy Code section 363(m).

69.     Moreover, because there will be absolutely no fraud or improper insider dealing of any kind, the Sale will not constitute an avoidable transaction pursuant to Bankruptcy Code section 363(n), and, as a result, the Successful Bidder should receive the protections afforded good faith purchasers by Bankruptcy Code section 363(m). Accordingly, the Debtor requests that the Court make a finding at the Sale Hearing that the agreement reached with the Successful Bidder was at arm's length and is entitled to the full protections of Bankruptcy Code section 363(m). The Debtor will submit evidence at the Sale Hearing to support these conclusions.

### H.      *Credit Bidding Should Be Authorized Pursuant to Bankruptcy Code Section 363(k).*

70.     A secured creditor is allowed to "credit bid" the amount of its claims in a sale of assets in which it has a security interest. Bankruptcy Code section 363(k) provides, in relevant part, that unless the court for cause orders otherwise, the holder of a claim secured by property that is the subject of the sale "may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property." 11 U.S.C. § 363(k). Even if a secured creditor is undersecured as determined in accordance with Bankruptcy Code section 506(a), section 363(k) allows such secured creditor to bid the total face value of its claim and does not limit the credit bid to the creditor's economic value. *See In re Submicron Sys. Corp.*, 432 F.3d 448, 459-60 (3d Cir. 2006) (explaining that "[i]t is well settled . . . that creditors can bid the full face value of their secured claims under section 363(k)").

71.    In this District, absent cause for restriction on credit bidding, courts have consistently ruled in favor of reserving a secured creditor's right to credit bid its claim. *See In re Source Home Entm't, LLC*, No. 14-115533 (KG) (Bankr. D. Del. July 21, 2014) (order approving Bid Procedures which authorized parties with secured claims to credit bid); *In re Fisker Auto. Hldgs, Inc.*, No. 13-13087 (KG) (Bankr. D. Del. Jan. 23, 2014) (order authorizing secured creditors to exercise right under section 363(k) to make a credit bid); *In re PTC Alliance Corp.*, No. 09-13395 (Bankr. D. Del. Nov. 6, 2009) (order authorizing, but not directing, the administrative agent to credit bid); *In re Hayes Lemmerz Int'l, Inc.*, No. 09-11655 (Bankr. D. Del. Sept. 22, 2009) (order authorizing interested party to exercise its right under Bankruptcy Code section 363(k) to make a credit bid); *In re Foamex Int'l Inc.*, 09-10560, (Bankr. D. Del. May 27, 2009) (order authorizing the sale of substantially all of the Debtors' assets in a $155 million credit bid over a $151.5 million all-cash bid); *see also Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.)*, 432 F.3d 448, 459-60 (3d Cir. 2006) (citations omitted). As provided in the Cash Collateral Order, in the event that the Prepetition Secured Party elects to do so, it is entitled to credit bid some or all of its claim secured by its collateral pursuant to Bankruptcy Code section 363(k).

III.    **The Assumption and Assignment of the Contracts Should Be Approved.**

    A.    ***The Assumption and Assignment of the Contracts Reflects the Debtor's Reasonable Business Judgment.***

72.    To facilitate and effectuate the sale of the Assets, the Debtor is seeking authority to assign the Assigned Contracts to the Successful Bidder to the extent required by such Successful Bidder.

73.    Bankruptcy Code section 365 authorizes a debtor to assume and/or assign its executory contracts and unexpired leases, subject to the approval of the court, provided that the

defaults under such contracts and leases are cured and adequate assurance of future performance is provided. *See* 11 U.S.C. § 365(b)(1). The standard applied by the Third Circuit in determining whether an executory contract or unexpired lease should be assumed is the "business judgment" test, which requires a debtor to determine that the requested assumption or rejection would be beneficial to its estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional") (superseded in part by 11 U.S.C. § 1113).

74.     Courts generally will not second-guess a debtor's business judgment concerning the assumption of an executory contract. *See In re Decora Indus., Inc.*, 2002 WL 32332749, at *8 (D. Del. 2002); *Official Comm. for Unsecured Creditors v. Aust (In re Network Access Solutions, Corp)*, 330 B.R. 67, 75 (Bankr. D. Del. 2005) ("The standard for approving the assumption of an executory contract is the business judgment rule"); *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006) ("The propriety of a decision to reject an executory contract is governed by the business judgment standard"); *see also Phar Mor, Inc. v. Strouss Bldg. Assocs.*, 204 B.R. 948, 952 (N.D. Ohio 1997) ("Courts should generally defer to a Debtors' decision whether to reject an executory contract."). A debtor's decision to assume or reject an executory contract or unexpired lease will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment. *See, e.g., Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pac. Ry. Co.*, 318 U.S. 523 (1943) (applying Bankruptcy Act section 77(b), predecessor to section 365, and rejecting a test of whether an executory contract was burdensome in favor of determining whether rejection is within the debtor's business judgment); *see also Sharon Steel*, 872 F.2d at 40 (describing deference to a debtor's business judgment as "breathing space afforded [to] the debtor to consider whether to reject or assume

31

executory contracts under the Code"); *Network Access Solutions*, 330 B.R. at 75; *Exide Techs.*, 340 B.R. at 239.

75.     The Court here should approve the decision to assume and assign the Assigned Contracts in connection with the Sale as a sound exercise of the Debtor's business judgment. First, the Assigned Contracts are necessary to operate the Assets and, as such, they are essential to inducing the best offer for the Assets. Second, it is unlikely that any purchaser would want to acquire the Assets unless a significant number of the Contracts needed to manage the day-to-day operations were included in the transaction. Third, the Assigned Contracts will be assumed and assigned as part of a process approved by the Court pursuant to the Bid Procedures Order and, thus, will be reviewed by key constituents in the Chapter 11 Case. Accordingly, the Debtor submits that the assumption and assignment of the Assigned Contracts, if required by the Successful Bidder, should be approved as a sound exercise of the Debtor's business judgment.

76.     A debtor-in-possession may assign an executory contract or an unexpired lease of the debtor if it assumes the agreement in accordance with Bankruptcy Code section 365(a), and provides adequate assurance of future performance by the assignee, whether or not there has been a default under the agreement. *See* 11 U.S.C. § 365(f)(2). Significantly, among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g.*, *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (stating that adequate assurance of future performance is present when the prospective assignee of a lease from the debtors has financial resources and has expressed willingness to devote sufficient funding to the business in order to give it a strong likelihood of succeeding).

77.     The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *EBG Midtown South Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 592 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 300 (2d Cir. 1993); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

78.     Contract Counterparties will have the opportunity to request additional adequate assurance information by responding to the Cure and Possible Assumption and Assignment Notice. Accordingly, the Debtor submits that the assumption and assignment of the Assigned Contracts as set forth herein should be approved.

79.     To assist in the assumption, assignment and sale of the Assigned Contracts, the Debtor also requests that the Sale Order approving the Sale of the Assets provide that anti-assignment provisions in the Assigned Contracts shall not restrict, limit or prohibit the assumption, assignment and sale of the Assigned Contracts and are deemed and found to be unenforceable anti-assignment provisions within the meaning of Bankruptcy Code section 365(f).

80.     Section 365(f)(1) permits a debtor to assign unexpired leases and executory contracts free from such anti-assignment restrictions, providing, in pertinent part, that:

> [N]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection . . . .

11 U.S.C. § 365(f)(1).

81.     Section 365(f)(1), by operation of law, invalidates provisions that prohibit, restrict, or condition assignment of an executory contract or unexpired lease. *See, e.g.*, *Coleman Oil Co., Inc. v. The Circle K Corp. (In re The Circle K Corp.)*, 127 F. 3d 904, 910-11 (9th Cir.

1997) ("no principle of bankruptcy or contract law precludes us from permitting the Debtors here to extend their leases in a manner contrary to the leases' terms, when to do so will effectuate the purposes of section 365"), *cert. denied*, 522 U.S. 1148 (1998). Section 365(f)(3) goes beyond the scope of section 365(f)(1) by prohibiting enforcement of any clause creating a right to modify or terminate the contract or lease upon a proposed assumption or assignment thereof. *See, e.g., In re Jamesway Corp.*, 201 B.R. 73 (Bankr. S.D.N.Y. 1996) (section 365(f)(3) prohibits enforcement of any lease clause creating right to terminate lease because it is being assumed or assigned, thereby indirectly barring assignment by debtor; all lease provisions, not merely those entitled anti-assignment clauses, are subject to court's scrutiny regarding anti-assignment effect).

82.      Other courts have recognized that provisions that have the effect of restricting assignments cannot be enforced. *See In re Rickel Home Ctrs., Inc.*, 240 B.R. 826, 831 (D. Del. 1998) ("In interpreting Section 365(f) [*sic*], courts and commentators alike have construed the terms to not only render unenforceable lease provisions which prohibit assignment outright, but also lease provisions that are so restrictive that they constitute de facto anti-assignment provisions."). Similarly, in *In re Mr. Grocer., Inc.*, the court noted that:

> [the] case law interpreting § 365(f)(1) of the Bankruptcy Code establishes that the court does retain some discretion in determining that lease provisions, which are not themselves ipso facto anti-assignment clauses, may still be refused enforcement in a bankruptcy context in which there is no substantial economic detriment to the landlord shown, and in which enforcement would preclude the bankruptcy estate from realizing the intrinsic value of its assets.

77 B.R. 349, 354 (Bankr. D.N.H. 1987). Thus, the Debtor requests that any anti-assignment provisions be deemed not to restrict, limit or prohibit the assumption, assignment and sale of the Assigned Contracts, and be deemed and found to be unenforceable anti-assignment provisions within the meaning of Bankruptcy Code section 365(f).

## IV.     Relief Pursuant to Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate.

83.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Debtor requests that the Sale Order be effective immediately upon its entry by providing that the 14-day stays under Bankruptcy Rules 6004(h) and 6006(d) be waived.

84.     The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d). Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay periods, the leading treatise on bankruptcy suggests that the 14-day stay periods should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to procedure." 10 *Collier on Bankruptcy* ¶ 6004.10 (15th rev. ed. 2006). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.*

85.     To maximize the value received from the Assets, and to ensure compliance with the requirements of the Cash Collateral Order, the Debtor seeks to close the Sale as soon as possible after the Sale Hearing. Accordingly, the Debtor requests that the Court waive the 14-day stay periods under Bankruptcy Rules 6004(h) and 6006(d).

## NOTICE

86.     Notice of this Motion has been given to (a) the Office of the United States Trustee for Region 3, serving the District of Delaware; (b) the parties included on the Debtor's list of

largest unsecured creditors; (c) the Prepetition Secured Party, (d) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002, and (e) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder. In light of the nature of the relief requested herein, the Debtor respectfully submits that no further notice of this Motion is required. The Debtor submits that, under the circumstances, no other or further notice need be given.

<u>**NO PRIOR REQUEST**</u>

87.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that this Court: (a) enter the Bid Procedures Order, in substantially the form attached hereto as <u>Exhibit A</u>; (b) enter the Sale Order, which shall be filed prior to the Sale Hearing; and (c) grant such other and further relief as is just and proper.


Dated: February 1, 2018                    Respectfully submitted,
        Wilmington, Delaware

                                           **POLSINELLI PC**
                                            */s/ Christopher A. Ward*
                                           Christopher A. Ward (Del. Bar No. 3877)
                                           Stephen J. Astringer (Del. Bar No. 6375)
                                           222 Delaware Avenue, Suite 1101
                                           Wilmington, Delaware 19801
                                           Telephone: (302) 252-0920
                                           Facsimile: (302) 252-0921
                                           cward@polsinelli.com
                                           sastringer@polsinelli.com

                                           -and-

                                           Jeremy R. Johnson (Admitted *Pro Hac Vice*)
                                           600 3rd Avenue, 42nd Floor
                                           New York, New York 10016
                                           Telephone: (212) 684-0199
                                           Facsimile: (212) 684-0197

jeremy.johnson@polsinelli.com

*Proposed Counsel to the Debtor and Debtor in Possession*

61695816.11